The United States can manage to find a small, unappropriated fund to participate, but if not, we will understand. We hope that by the time the briefs are filed, the courts will still be in operation. We'll see. Okay, thank you very much. The next case for argument this morning is Weil v. Metal Technologies. Thank you. Mr. Patrick. Good morning, Your Honors. I appreciate your time this morning. I appear here on behalf of Metal Technologies. I realize the court has the briefing in front of it. However, I would like to begin with an overview of the litigation to place the issues in context. As demonstrated in the briefing, this case took a long and winding path to get here today. And we are focused in large part today on Not as long and winding as the last case. Sounds like it. I'm glad I'm not arguing the last case. We're here today in large part on an attorney's fees issue. And I think to understand that attorney's fees issue better, we need to understand what the case is about. And what it was about from the get-go. And what this case was about from the get-go was pre-shift and post-shift time. Under the Fair Labor Standards Act and in the NOH laws. And predominantly, it was about pre-shift time. When this case landed on my desk, the focus was on pre-shift time. And the reason for this is the way metal technologies paid its employees. It paid its employees based on an eight-hour shift. And this worked because the plant operated three eight-and-a-half-hour shifts. They operated around the clock. And each shift then overlapped the next with a 30-minute lunch break for an eight-hour shift. The shift started with a short meeting with the supervisor. The employees then went out on the plant floor and replaced those employees who were running the machine they were going to take over. Those employees spent some time tidying up and left in time for the end of their shift. And the point being, there's no reason for anybody to work prior to their shift. There's no reason for anybody to work after their shift. This 30-minute overlap ensured that was not necessary. However, in the event an employee did work beyond their shift time, the employee could fill out an overtime authorization form and be paid for that time. So in many ways, this case is very simple, and that's sort of the point of placing this in context. Now, while these folks were awaiting the start of their shift, they often clocked in. And the reason this occurred is metal technologies is in a small town in southern Indiana. It draws its employees from a wide area. Those employees arrive to work early. They show up, and they clock in, and they typically would sit in the break room or sit in their cars in the parking lot and essentially wait for their shift to start. As the district court found, the evidence conclusively showed that these employees were not actually working when they were on the clock prior to their shift. And again, that was really the focus of the case. They were simply waiting for their shift to start. Nonetheless, plaintiffs have pursued this case from the get-go under the theory that employees should be paid based solely on their clock time without regard to whether they were performing compensable work. Using this theory, plaintiffs deemed this to be a rounding case under the Fair Labor Standards Act. This was never a rounding case. Rounding cases involve employees who are engaged in compensable activities, at least arguably. And then there's a determination as to whether or not there's improper rounding. In fact, the district court here specifically stated it did not find any rounding here at all. In the few instances in which it found unpaid wages for plaintiffs while in fault, it found wages for blocks of time that were simply unpaid for unexplained reasons. Counsel, I'm getting a little puzzled. We have indeed read the briefs. Yes, I understand. You don't even seem to be approaching the subjects you raised in your brief. You might want to do so. I will move along in the context. Okay. So it's not a rounding case. We prevailed on that claim at the trial court. In addition to the rounding claims, there's a claim for wage deductions under the Indiana Wage Deduction Statute. When the case was filed, Metal Technologies was using a form for wage deductions. Can I ask you a really particular question? Sure. Why did the district court not err in awarding costs? The court has great discretion in awarding costs. I think this is a classic case of a mixed results case. I think defendants prevailed on far more issues than plaintiffs. They prevailed under Indiana law, did they not, on that uniform, that payroll claim? Yes, yes. Under an Indiana statute that says costs shall be awarded. Yes. But, again, federal law applies as well. Under the rules of civil procedure, the court cited two cases that allow it to exercise discretion in balancing state law claims for costs and claims for costs under federal rules. And, again, those cases say the district court has a great deal of discretion in that regard. Counsel, let me ask you a question on this same point. Does Rule 54 preempt any Indiana statutes that permit costs? In other words, under the Rules Enabling Act, is Rule 54 the only controlling law with respect to costs? Or would the Indiana statutes even have any applicability here? We're certainly not arguing that there's preemption here. I think it's a balancing test, and I think that's precisely... A balancing test. I agree with you that it's a balancing test, but it's a balancing test under Rule 54. Yes. I'm asking you whether the Indiana statutes on costs have any applicability. Where the federal rules of civil procedure apply, they control, and state law is pushed out. And I'm asking whether you think Rule 54 is one such case. I don't believe so, because this was a state claim. Brought in federal court. Yeah, but I think the issue of cost, and I think the district court analyzed the issue of cost under state law. In terms of the state claim, and also balance that against Rule 54. I don't think you necessarily need to get to preemption to arrive at the result we saw at the district court. Well, we kind of do, don't we? Because if you have the district court, correctly or incorrectly, we can figure that out. But if the district court says, this is a mixed verdict scenario, and the mixed verdict scenario brings with it discretion. Discretion to not award costs that are otherwise mandated under the statute on which the plaintiff unquestionably prevailed on that uniform claim. So we have to figure out what rule applies here. And I think, to Judge Barrett's point, when federal court were operating under the federal rules of civil procedure, I think that's why the judge was correct in citing to the federal rules, and then reaching the result she reached. I have not seen case law that says the court is necessarily mandated to use Rule 54. Well, a different way of putting this question would be, given that Rule 54 gives the district judge discretion, how should the Indiana statute substantively affect the exercise of that discretion? I think the state statute provides a basis for providing costs, and it's a starting point. No, no. In federal court, the basis of providing costs is Rule 54 and 18 U.S.C. 1920, and nothing else. What costs are in state court is neither here nor there. But state law can affect the exercise of discretion under federal law. Don't you think that would be true? Yes, I agree with that. All right. So suppose we rephrase the question as, why would it be an appropriate exercise of discretion to deny costs for pursuit of the, I think, wholly successful uniform rental claim? Because balanced against that is the fact that defendants prevailed on the large majority of claims brought by the plaintiffs, and Rule 54 provides an avenue for defendants to seek costs. In fact, we filed a bill of costs. Our bill of costs was denied in the court's order because she applied this balancing approach and essentially said neither side gets cost. I'll move to the wage deduction issue in terms of, as you understand from the briefing, there's a pre-April of 2016 wage deduction issue that was conceded from the get-go. That wage deduction was not permitted under Indiana law. It's simple. Post-April 2016, when Metal Technologies amended its form to make it revocable at any time, at that point the law had been amended to allow deductions for the purchase of uniforms and equipment necessary to perform the job. We made the argument that renting uniforms through a service meets that statutory provision for the purchase. If I fly to the airport in Indianapolis and get a Hertz car for the day and I drive it away, have I purchased that car? No, but you've purchased the service. No, I've rented that car. You agree that Indiana recognizes the distinction between rental and purchase. Yes. And Indiana used the word purchase. Well, if Indiana were a really weird state and there was just no distinction between purchase and rental in Indiana, well, sure, purchase, rental, it's all the same. But that doesn't appear to be an adequate description of Indiana law. I understand, Your Honor. It's a purely statutory interpretation question. We view it as a purchase of services because this is a service. The uniforms are brought in each week. They take up the old uniforms. It's an ongoing process. Nobody ends up with a shirt or a pair of pants. It simply doesn't work that way. It's a service, and they're purchasing a service. And I certainly think you can purchase a service. I'll move to the fees question. And essentially, as you see in the briefing, our primary argument is that the fees awarded were too high. The wage deduction claim was an incredibly simple claim. Had it been filed standing alone, this case would have been resolved before we filed an answer to the complaint because it was that simple. But we couldn't do that because, well, two reasons. One, plaintiffs were seeking to include in the class individuals who had been terminated who were not properly in the class for the wage deduction claim. And two, all the attention was focused on the pre-shift time because the claim early in this litigation was the pre-shift time, the rounding claims, for lack of a better term, were valued at about a million to $1.4 million. And that's where the focus was. That's where all of the energy in this case was. The wage deduction claim just sort of rode along. We made a pass at trying to resolve it independently and couldn't get there. Certainly wish we would have. But to assess, the bottom line is this. To assess fees in the amount of $101,000 for that claim strikes us as just far too high. Based upon the efforts required, based upon the theories involved. With regard to the remaining rounding claims, again, it's not truly a rounding claim. But for lack of a better term, we're going to call it a rounding claim. Plaintiffs were awarded nominal damages. Plaintiff Weil, in fact, was awarded $2.31 in wages. And yes, the district court significantly reduced those fees. But we think there should have been no fee awarded for those claims under Farrar. We've addressed the cost issue in terms of what we're seeking on appeal. We're seeking a reversal of the court's decision on the post-April 2016 wage deduction claim. And we're seeking reversal and remand to reduce the attorney's fee award. Now, we have the situation where we're appellants and cross-appellants. So I will shift gears for a moment and talk about the decertification issue. So the class was conditionally certified under the Fair Labor Standards Act and certified under Rule 23 for the state claims for these rounding claims, for these pre-shift claims, post-shift claims. And at trial, I'm sorry, I jumped ahead. So there's conditional certification. The court later decertified the rounding claims because there's simply no evidence that the employees were working prior to the shift. Between certification and decertification, we took the I'm always puzzled when cases come to us in this posture, where the plaintiffs have litigated and lost and then demand that a class be certified, presumably to take everybody else down in flames with them. And the opponent, instead of saying, yeah, yeah, everybody should lose all at once, says, oh, please, don't allow a class to be certified. Isn't each side disserving its interest? What's going on here? It's a valid point, Your Honor. We have elected to oppose that for the simple reason that we don't want to go back into the frying pan in this litigation. Again, it was There wouldn't be anything that would happen except the district court would enter a judgment saying, time on the clock is not the same as time worked, the class loses. It's already decided that with respect to the two representative plaintiffs. I understand. But the issue is presented to this court. And we have the option of either opposing that position or going along. And we've opted to oppose it so that we don't have to go back to the district court. And so that's the approach we're taking. But you're right. And it goes to the issue here is these two plaintiffs lost that case. They lost those rounding claims at the district court. They had not appealed those claims. And yet they seek to represent others as a class. It doesn't Eppenscheid kind of control here in saying that it's not moot. Well, there are certainly arguments as to whether or not there is mootness. I don't think you need to get to that level of detail, frankly, because these individuals. Mootness is an Article 3 question. I cannot bypass it in favor of something else. Well, where I was headed, Your Honor, is a simple analysis, even done by the district court, as to whether or not these individuals are similarly situated, the basis of the class, would show that they're not because the court has already determined that they were not working. But you would be asking us to affirm on the merits and what the point Judge Easterbrook is making is we can't skip ahead to saying, yes, the district court was right. The class shouldn't have been certified if the appeal is now moot and we lack jurisdiction to decide the appeal. I will tell you, Your Honor, it's not an issue I have reviewed in great detail. It would seem to me that even if there's a question regarding mootness, that could be followed by a determination that they can't serve as class representatives based upon the result at the district court level. In other words, they're not appropriate class representatives. And so I don't know why. It wouldn't seem to make sense to have to go through both steps and then go back and re-litigate that issue, is my point. I have just a few seconds left. I think I've covered the issues I want to cover, unless there are any questions. Thank you, Mr. Patrick. Thank you. Mr. Congress. Judges, good morning. May it please the Court. The plaintiff's primary purpose on appeal is to ask this court to reverse the May 26, 2017 partial decertification order issued by the district court. Can you address that mootness question? Sure. In terms of standing, the plaintiffs have a stake remaining in this claim for standing. They have standing based upon their obligations, particularly Melissa Fultz, who is the class representative. She has to defend this claim, including fees, including the cost issue, which is affecting the common fund. At some point, for example, if costs aren't paid, that money either has to come from the common fund, recovered in the successful class action from the attorney fee award, or impairs her individual award organs, her incentive award. So there is standing. The incentive award was the reason why you were arguing that she still had standing if the case wasn't moved. Well, she was denied based upon the smaller recovery because the court awarded $101,000 to the class in the deduction claims, but the decertification resulted in a much smaller award than if both theories had gone through to trial. So she has standing for that reason. She has standing because she has this obligation as a class representative. Mr. Weil was given no incentive award because the case had been decertified. He had been one of the representatives of the Fair Labor Standards Act collective action. But the primary purpose in asking that the court reconsider, and Judge Easterbrook, you raised this issue, the case, nothing about the case or the plaintiff's plan of proving on a class-wide basis changed between January 25 of 2016 and May 26 of 2017. There were no new arguments raised. There was no new evidence. Could you explain to me why you want to take the entire class down in flames with the two representative plaintiffs? It is possible. The district court rejected their argument on the merits. If the class is certified, then the class loses on the merits across the board. How does that help them? It rejected some of their claims. Part of what happened at the trial on the individual claims is the rounding was greater than just this characterization of this case as a pre- or post-shift case. That was never true. As far as I understand, the theory that would justify the class is the theory that once you are on the clock, once you've punched in, you have to be paid. That theory was rejected on the merits. It is inconsistent with the federal regulation. Class certification was not and never would have been appropriate for person-specific errors like $62 OF deductions or something like that or the $2.37 that one representative plaintiff got. That was never the subject of class certification. It couldn't have been. Unless I'm missing something very fundamental, certification of the class would do nothing but cause an immediate judgment against the whole class. With remand, there will be reassignment of the case and these arguments that did work, these very same arguments, these very same pieces of evidence that did work. What's being ignored is the folks were working when they were on the clock and the company defined the work. But I think Judge Easterbrook's point is that you have judicial findings that are rejecting the line of argument you're talking about. You're re-arguing the issue that underlied your complaint in the allegations. If I understand his question correctly, the case went to trial and that theory absolutely did not prevail. It probably lost before that at summary judgment, which is on the record there too. And so his point is that you can't, I think, you can't just somehow wipe that out or act like that didn't occur. At the summary judgment level, plaintiff's motion was denied. There was no summary judgment ruling against the plaintiffs, and at trial there were no rulings. But then there was a trial involving the class representatives, and this legal theory was rejected on the merits. It was rejected on the facts, and it was rejected on the law on the basis of 29 CFR 785.48a, which the district judge said it was utterly irresponsible of the plaintiff class not to address, and which I notice your brief still doesn't address. I don't see how you think you're going to improve the prospects of the class. I think that if we had done as the district court suggested and presented a series of witnesses to say, I was working based upon fuzzy recollections rather than based upon a system that was created by the employer, the choice of time clocks, the regulation you're making reference to is the first part of 29 CFR 785.48. It's A. And it says time clocks don't have to be used. And if time clocks are used, if someone comes in voluntarily, they don't have to be paid so long as they're not actually working. They were working, and the employees were trained to use the time clock, and they were promised that the time clock punches were going to be treated as hours that they worked. That was the argument you made to the district court, and it was rejected both as a matter of law and as a matter of fact. And the judge added that the two representative plaintiffs were lying. I don't know how you think you're going to avoid that. The possibility would have been had we gone to trial as a class and those rulings were made, there may be a different appeal before the court today. We won't go to trial as a class. If this is certified as a class, it will lead to immediate judgment based on the findings and conclusions of law already made. You need to understand that. I do understand your point, but I believe that that was legal error and a factual misunderstanding. But I will move on to the other issues if you wish. The attorney fee appeal is narrow. It is based on what I would consider a worst-case scenario for the plaintiffs. The argument is if, as the district court seemed to indicate and Metal Technologies has argued, that the only substantive fees or fees of any real amount should be based upon the victory regarding the illegal deduction class, then the amount awarded for successful litigation through trial in a Rule 23 class action of $116,000, which amounts to payment at $400 per hour for only 290.24 hours of work, is objectively unreasonable, and the court failed to consider the evidence that it had before it regarding the amount of time that was taken and that was necessary to take to get that case through to judgment. Some of the errors are mathematical in nature. The district court appropriately asked me to submit supplemental affidavits breaking down line item by line item the time that I had on the bill. What I did was I gave her another affidavit. I took the itemized bill. One was highlighted in blue, and the second attachment was highlighted in yellow, telling her those entries that were specific to time rounding and those entries that were specific to uniform deductions. And then what I did to make some sense out of the case is I broke the bill down into stages of the case. How much time was spent investigating and pleading? How much time was spent in discovery to class certification? After the case was certified, how much time was spent in discovery regarding liability issues and class formation up through cross motions of summary judgment and the decertification motion? There was a small break in time of about four months between January and May of 2017. There were a small amount of fees before that May 26, 2017, order. And then I made sure that the court knew that after she decided to partially decertify the case and end the class rounding claims, there was still work to do regarding the deduction claims and the individual claims that led to trial. There were, in total, between the trial and the post-trial briefing that the court ordered, there were $178,000 in additional fees. That is more for that portion in time that had nothing to do whatsoever with the rounding issues that was spent getting the case to the point of her ruling on fees. 26% of the attorney and the paralegal hours were spent after the rounding issue existed no longer. There had been a concern, and I don't wish to advocate against my client's own position, but there had been a concern that if the court had taken the hours up until May 26 of 2017, there were about $480,000 in charges at that time, and if the court thought that the work that had been done had been done just as much on the time rounding, for example, taking a deposition, attending a settlement conference, attending status conferences, pleading, preparing the motion to certify that worked, preparing the motion for summary judgment that worked, the plaintiffs are the only party that was awarded any type of judgment at the summary judgment stage. Here's the difficulty that I'm having with this. The difficulty that I have is that I read your affidavit. In fact, I have it right in front of me, okay? And I read the district court judge's reasoning, and in substance what she's saying, as I understand it, is the kind of time rounding claim, just for shorthand, is what was driving this litigation. The uniform rental claim was a little bit more lagging, okay? It wasn't the lead here. She also said that the plaintiff herself did not present anything that really tried to untangle all the time in any way that she found helpful to her, and so she was left to approximate, and she approximated with the 85-15 divide that you now challenge. For you to prevail, we have to call that or deem that an abuse of discretion. Sure. What's the one or two reasons, just briefly, why she abused her discretion in approximating? First, she made a proportionality determination, which under the Indiana wage payment statute is incorrect. The case that you had was the R.L. Turner Corporation versus Russell. That award was actually eight to nine times the plaintiff's recovery, and the court said that the recovery itself is only one factor that cannot be the driving factor for the attorney fee award. Second, the issue that the uniform deduction claim was small or wasn't contested, none of that is true. One of the things that happened in this case that was remarkable, I pointed it out, I believe, in that case, but I pointed it in other filings, is this case had an almost 50% opt-out rate. Studies show that the normal opt-out rate in a Rule 23 class is between 0.01% and 0.02% of the putative class. This case had an opt-out rate in the high 40s, and not surprisingly, almost every single opt-out member was a current employee at the time. The uniform deduction case would have had a value of $300,000 to $400,000. The work done to make the recovery for the people that stayed in the case and still wanted their money had to be done as much and with the same fervor as the work done on the time rounding claim. The difference, and I pointed this out in the brief, between the time rounding claims and the uniform claims is... They're very different claims, though. The uniform claims turn on the statutory interpretation question that Judge Easterbrook was asking your colleague about. The time rounding claims, that's a completely different matter. There you're in a big factual swamp, and you're tangling it out and figuring out what's going on as a matter of fact with respect to the way people are getting paid, how is the time clock impacting this or not impacting... It's just an entirely different claim. Understood, but the difference had been, I pointed this out in that affidavit, my office did the work itself on the uniform deduction claims, figuring out who had a claim, how much they were owed, what treble damages would be. We hired an expert witness to merge the time and the payroll records because it was too much, and we spent a lot of money on that, but we did not do that work ourselves. Our bill and our request for fees doesn't include that expert witness's bill. My office will have to pay that. So that would be one of the very big differences with fees. I'll answer other questions about fees. I want to ask one more question about that. Why isn't there an argument that the district court actually gave you too much? Because Indiana law precludes the award of any fees on your unsuccessful kickback claim. You won on the uniform wage deduction, and she kind of did it all globally and didn't say she wasn't giving you awards specifically on that, so it seems like there's an argument that you should lose some. The fee award should be for the work on the case as a whole in general, but in terms of the one big thing that the Indiana law brings up is that the fee should also be looked at in how much time should it take to get this result, but also a comparison of the fee award to other fees in similar cases. There aren't similar cases where somebody had won something. Granted, very small in some areas, but won something on. There were two factual theories using three different statutes, and we were paid 17.5 cents on the dollar in this case, and in terms of comparison to other fee awards, no one in the Southern District of Indiana took a wage in our class action or collective action through trial and was awarded for only 290 hours of attorney time. That comparison, or the failure to make a comparison to similar fees in similar cases hurt us, and that is one of the big reasons to request a remand. Well, I understand that. You didn't answer my question about her giving you the Lodestar amount on the wage deduction claim, which included the kickback claim, where there's Indiana law saying you can't recover fees when you lose and you lost on the kickback claim. Well, we never really litigated because it wasn't certified, but that seems like a criticism for alternate pleading, and to require the plaintiffs to pick only those theories that they are most likely to win rather than to cover all of the theories, depending on how discovery turns out, it would be the same as criticizing a defendant for having a laundry list of affirmative defenses when really they only had one that might stick. So they were overlapping alternate theories. I don't see a problem with it, and I don't see why there should be a penalty in the attorney fee award. To address the cost issue, the first thing I want to point out about the cost issue is that the defendant did not have a legal basis to file a bill of cost. The defendant's bill of cost, if you'll note, was filed before there was a final judgment. But also the district court, it's on page 23 of the March 30, 2018 findings fact, ordered that the plaintiffs were entitled to their fees and their reasonable costs and ordered the plaintiffs to file their bill of cost, which we did. We had a statutory basis, if you look at Rule 54D, and we had two statutory bases, the FLSA, which is Section 16B, and the Indiana wage payment statute, which is 22252. Both only provide costs to a successful plaintiff. To what extent does the Indiana statute apply to litigation in federal court? Because the court had supplemental jurisdiction over the Indiana claims. No. To what extent does it apply? We've said in language that I don't think could be clearer that federal procedures apply in state court. Sorry, federal procedures apply in federal court, even if it's based on the diversity jurisdiction. That's true of the supplemental jurisdiction as well. If I may, Judge Easterbrook, the right to cost for a plaintiff under the Indiana wage payment statute arises under Indiana Code 22252. So the damages and also your recovery of your attorney's fees and costs are part of your recovery as a successful plaintiff. So that is part of your substantive right to recover, not a procedural right. It's very hard to think of costs as a substantive entitlement. But it arises under the same statute. Suppose Indiana defines costs to include expert fees, whereas the Supreme Court has held that under 28 U.S.C. 1920, costs do not include expert fees. Would the federal court award expert fees as part of costs? I'm not sure that they would. And, actually, the problem in Indiana is costs is defined more narrowly. Well, it may be. But I'm trying to figure out the general question, whether an Indiana statute about costs applies at all in federal court. This is always a little difficult. The Supreme Court views entitlements to attorney's fees as substantive, even if they are defined by either federal or state law as costs. That might support your argument that costs are substantive if states want to make them substantive. That's what led me to the expert fees question. And I don't think that can be ducked as easily. But I think the costs are the same as attorney fees, and they're compensatory in nature under the statute and the interpretation that Indiana courts have given their own statute. Well, 54 treats costs and attorney's fees differently. They're two different provisions, and the attorney's fees provision expressly acknowledges that attorney's fees are going to be controlled by the underlying substantive law. Sure. You're talking about Rule 54. Yeah. And we had two laws here, the FLSA and the wage payment statute. But again, and I note my time's out and I didn't address... As long as we're asking questions, you can give answers. Sure. And may I ask for clarification? Sure. I mean, I guess I feel like in response to Judge Easterbrook you're resorting to arguments about how costs are treated by the Indiana law. As I understand your answer, maybe I'm misunderstanding your answer, in an effort to argue that the Indiana law should control the costs. Am I understanding your argument? I think the Indiana law is a statutory basis for Rule 54D, as is the FLSA's Section 16B, but also an order of the court was a basis, and also this argument that there are mixed results. There was a procedural victory for the defendant, but the prevailing party by all respects on each claim was the plaintiff in terms of an entitlement to a cost. The costs are limited and don't include expert fees, and we're stuck with filing fees and deposition costs, but just the same. Without time. Okay. Thank you, counsel. Judges, thank you. Mr. Patrick, you have 45 seconds. We'll round it up to a minute. Perfect. Quickly. The plaintiff has continued to assert that the wage deduction claim was intertwined with the rounding claim. Again, the form used by Mental Technologies was in violation of the statute. It would take about the amount of time I have left to figure that out. The amount of damages was calculated using a payroll report from Mental Technologies' payroll system. That's how simple that claim was. Thank you. Thank you very much. The case will be taken under advisement.